## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **TROY L. TRAYWICK,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **CIVIL ACTION** |
| **v.** ) | |
| ) | **No. 11-1077-JWL** |
| ) | |
| **MICHAEL J. ASTRUE,** ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |
| _____ ) | |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security (hereinafter Commissioner) denying disability insurance benefits (DIB) and supplemental security income (SSI) under sections 216(i), 223, 1602, and 1614(a)(3)(A) of the Social Security Act.  42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A) (hereinafter the Act). Finding no error, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's decision.

## I.      Background

Plaintiff applied for both DIB and SSI on January 18, 2008, and alleges disability beginning January 31, 2007.  (R. 11, 106-17); <u>see also</u> (R. 26) (amending onset date to January 31, 2007).  The applications were denied initially and upon reconsideration, and

Plaintiff requested a hearing before an Administrative Law Judge (ALJ).  (R. 11, 56-59, 73-74).  Plaintiff's request was granted, and Plaintiff appeared with counsel and testified at a hearing before ALJ Michael A. Lehr on June 10, 2009.  (R. 11, 21-55).  On October 19, 2009, ALJ Lehr issued a decision finding that Plaintiff has the residual functional capacity (RFC) for a range of light work, limited to walking or standing only two hours in an eight-hour workday, and subject to several additional limitations.  (R. 11-20).  He determined that although Plaintiff is unable to perform any past relevant work, there are jobs existing in significant numbers in the national economy that Plaintiff can perform, taking into account his age, education, work experience, and RFC.  (R. 18-20). Consequently, the ALJ determined Plaintiff has not been disabled within the meaning of the Act, and denied his applications.  (R. 20).  Plaintiff sought Appeals Council review of the ALJ's decision, but his request was denied.  (R. 1-7).  Therefore, the ALJ's decision is the final decision of the Commissioner.  (R. 1); Blea v. Barnhart, 466 F.3d 903, 908 (10th Cir. 2006).  Plaintiff now seeks judicial review.  (Doc. 1).

## II.    Legal Standard

The court's jurisdiction and review are guided by the Act.  Weinberger v. Salfi, 422 U.S. 749, 763 (1975) (citing 42 U.S.C. § 405(g)); Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009) (same); Brandtner v. Dep't of Health and Human Servs., 150 F.3d 1306, 1307 (10th Cir. 1998) (sole jurisdictional basis in social security cases is 42 U.S.C. § 405(g)).  Section 405(g) of the Act provides for review of a final decision of the

2

Commissioner made after a hearing in which the Plaintiff was a party. It also provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the factual findings are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but is less than a preponderance; it is such evidence as a reasonable mind might accept to support a conclusion. Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988). The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

An individual is under a disability only if that individual can establish that he has a physical or mental impairment which prevents him from engaging in any substantial gainful activity, and which is expected to result in death or to last for a continuous period of at least twelve months. Thompson v. Sullivan, 987 F.2d 1482, 1486 (10th Cir. 1993)

(citing 42 U.S.C. § 423(d)); see also, Knipe v. Heckler, 755 F.2d 141, 145 (10th Cir.

1985) (quoting identical definitions of a disabled individual from both 42 U.S.C.

§§ 423(d)(1) and 1382c(a)(3)(A)); accord, Lax, 489 F.3d at 1084 (citing 42 U.S.C.

§§ 423(d)(1)(A), 1382c(a)(3)(A)).  The claimant's impairments must be of such severity

that he is not only unable to perform his past relevant work, but cannot, considering his

age, education, and work experience, engage in any other substantial gainful work

existing in the national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner uses a five-step sequential process to evaluate disability.  20

C.F.R. §§ 404.1520, 416.920 (2009); Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir.

2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a

determination can be made at any of the steps that a claimant is or is not disabled,

evaluation under a subsequent step is not necessary."  Wilson, 602 F.3d at 1139 (quoting

Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether

claimant has engaged in substantial gainful activity since the alleged onset, whether he

has a severe impairment(s), and whether the severity of his impairment(s) meets or equals

the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt.

P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner

assesses claimant's residual functional capacity (RFC).  20 C.F.R. §§ 404.1520(e),

416.920(e).  This assessment is used at both step four and step five of the sequential

evaluation process.  Id.

The Commissioner next evaluates steps four and five of the sequential process--determining whether claimant can perform his past relevant work; and whether, when considering vocational factors of age, education, and work experience, claimant is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one through four the burden is on claimant to prove a disability that prevents performance of past relevant work. Blea, 466 F.3d at 907; accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy within Plaintiff's capability. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

Plaintiff claims two errors in the Commissioner's final decision. He claims (1) that the ALJ improperly discounted the medical opinion of his treating psychiatrist, Dr. Lauronilla; and (2) that the ALJ failed to consider the combined effects of all of Plaintiff's impairments when assessing RFC. (Pl. Br. 4-10). The Commissioner argues that the ALJ properly discounted Dr. Lauronilla's opinion, and cites record evidence which in his view supports that determination. (Comm'r Br. 4-12). He also argues that the ALJ in fact considered the combined effect of Plaintiff's impairments. Id., at 13-14. The court agrees that the ALJ properly discounted Dr. Lauronilla's opinion, and that the decision reveals the ALJ considered the combined effects of Plaintiff's impairments. The court will address the issues in the order presented in Plaintiff's brief.

### III.    Evaluation of Dr. Lauronilla's Treating Source Opinion

Plaintiff claims the ALJ erroneously evaluated Dr. Lauronilla's opinion.  He

acknowledges that the decision is supported by the opinion of Dr. Smith, the consultant

psychologist who evaluated Plaintiff and provided intelligence testing for the agency on

June 11, 2008, and by the opinion of Dr. Blasi, who provided a psychological evaluation

including intelligence and other psychological testing for Plaintiff on November 11, 2008.

(Pl. Br. 5-6) ("Both of these psychologist [sic] essentially thought plaintiff's mental

condition would not interfere with work"); see also, (R. 321-26) (Dr. Smith's Mental

Status Exam); (R. 372-74) (Dr. Blasi's Psychological Evaluation).[1]  But, Plaintiff argues

that his "mental health declined at the beginning of 2009" (Pl. Br. 6), that Dr. Lauronilla's

treatment began in 2009, id. at 7, and that Dr. Lauronilla's opinion is "consistent with the

record from 2009 and forward."  Id. at 5.  Plaintiff argues that the ALJ relied upon

erroneous factors to discount Dr. Lauronilla's opinion:  (1) Dr. Lauronilla's handwritten

_____

[1]Dr. (Don) Blasi appears to be a psychologist who treated and evaluated Plaintiff
for some unknown period of time, and provided the testing and Psychological Evaluation
reflected in his report included in the record.  This appearance is strengthened by
Plaintiff's hearing testimony that although Dr Lauronilla is his current psychiatrist, he
"used to go to another doctor like that, Don, Don, on Hillside."  (R. 50).  Although the
doctor on Hillside was later identified at the hearing by Plaintiff's counsel as "Don
Blazer," it seems likely that Dr. Don Blasi is the one to whom this testimony refers since
Dr. Don Blasi provided the report at issue here, Dr. Blasi's office address is shown as
"641 South Hillside," Dr. Blasi's report was produced in response to the state agency's
request for records, and there are no records or evidence of a request for records from a
"Dr. Don Blazer."  (R. 372-73).  Nonetheless, the court need not decide this issue because
the ALJ did not consider Dr. Blasi to be a treating source, and the court will not do so.

note, (2) Plaintiff's testimony that he can use public transportation, and (3) consideration of the Global Assessment of Functioning (GAF) scores assigned by staff at ComCare while ignoring Dr. Lauronilla's GAF scores. (Pl. Br. 7-8). Plaintiff makes the additional argument that Dr. Lauronilla's opinion is worthy of greater weight than the opinions of Drs. Smith and Blasi because Dr. Lauronilla is both a treating source, and a psychiatrist.

The Commissioner argues that the ALJ properly discounted Dr. Lauronilla's opinion because: (1) Dr. Lauronilla discounted his own opinion, and his statement suggests that he may not be a "treating source," (2) Dr. Lauronilla's opinion is inconsistent with Plaintiff's statement that he can use public transportation, (3) the opinion is inconsistent with the opinions of Dr. Smith and Dr. Blasi, and (4) the opinion is inconsistent with the fact of improvement in Plaintiff's condition when he sought treatment and was placed on medication. The Commissioner also argues: that the evidence does not support Plaintiff's assertion that his mental condition declined in 2009; that Plaintiff alleged his disability began on January 31, 2007--not thereafter; and that the GAF scores are equivocal and the ALJ properly found that they do not support Dr. Lauronilla's opinion.

In his reply brief, Plaintiff claims the Commissioner's argument that Dr. Lauronilla is not a treating source is impermissible post hoc rationalization of the ALJ's decision. (Reply 1). He asserts that contrary to the Commissioner's argument, there are no inconsistencies between the opinions of Dr. Lauronilla and Drs. Smith and Blasi, and that

7

although Dr. Lauronilla qualified his opinion as based on limited information, he nonetheless offered the opinion, and the fact that he qualified his opinion suggests he carefully weighed the limitations he assessed.  (Reply 1-2).  Plaintiff also asserts that the evidence cited by the Commissioner in support of the Commissioner's argument that Plaintiff's condition did not decline in 2009 is merely improper post hoc rationalization which the Commissioner may not assert, and upon which the court may not rely to justify the decision.  Id. at 2.

A.    **Standard for Evaluating Treating Source Opinions**

As Plaintiff points out, the opinions of physicians or psychologists who have treated a claimant for a period of time (treating sources)[2] are generally given more weight than the opinions of those who have merely examined the claimant (nontreating sources), or of those who form an opinion after reviewing the medical record (nonexamining sources).  (Pl. Br. 4) (citing Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004)).  The opinion of a nontreaing source is generally entitled to less weight than that of a treating source, and the opinion of a nonexamining source who has never seen the

---

[2]The regulations define three types of "acceptable medical sources:"

"Treating source:"  an "acceptable medical source" who has provided the claimant with medical treatment or evaluation in an ongoing treatment relationship.  20 C.F.R. §§ 404.1502, 416.902.

"Nontreating source:"  an "acceptable medical source" who has examined the claimant, but never had a treatment relationship.  Id.

"Nonexamining source:"  an "acceptable medical source" who has not examined the claimant, but provides a medical opinion.  Id.

claimant but formed an opinion after simply reviewing the records is generally entitled to the least weight.  (Pl. Br. 4); see also Doyal v. Barnhart, 331 F.3d 758, 762-63 (10th Cir. 2003); Talbot v. Heckler, 814 F.2d 1456, 1463 (10th Cir. 1987) (citing Broadbent v. Harris, 698 F.2d 407, 412 (10th Cir. 1983), Whitney v. Schweiker, 695 F.2d 784, 789 (7th Cir. 1982), and Wier ex rel. Wier v. Heckler, 734 F.2d 955, 963 (3d Cir. 1984)).

A treating source opinion about the nature and severity of a claimant's impairments must be given controlling weight if it is both well supported by clinical and laboratory diagnostic techniques, and "not inconsistent" with the other substantial evidence in the case record.  (Pl. Br. 4) (citing Castellano v. Sec'y of Health & Human Servs., 26 F.3d 1027, 1029 (10th Cir. 1994)); see also Watkins v. Barnhart, 350 F.3d 1297, 1300-01 (10th Cir. 2003); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); Soc. Sec. Ruling (SSR) 96-2p, West's Soc. Sec. Reporting Serv., Rulings 111-15 (Supp. 2011) ("Giving Controlling Weight to Treating Source Medical Opinions").

If the treating source opinion is not given controlling weight, the inquiry does not end.  (Pl. Br. 5); see also Watkins, 350 F.3d at 1300.  A treating source opinion is "still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927."  Watkins, 350 F.3d at 1300.  Those factors are:  (1) length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by

9

relevant evidence; (4) consistency between the opinion and the record as a whole;

(5) whether or not the physician is a specialist in the area upon which an opinion is

rendered; and (6) other factors brought to the ALJ's attention which tend to support or

contradict the opinion.  Id. at 1301; 20 C.F.R. §§ 404.1527(d)(2-6), 416.927(d)(2-6); see

also Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001) (citing Goatcher v.

Dep't of Health & Human Servs., 52 F.3d 288, 290 (10th Cir. 1995)).

After considering the regulatory factors, the ALJ must give reasons in the decision

for the weight he gives the treating source opinion.  Id., 350 F.3d at 1301.  "Finally, if the

ALJ rejects the opinion completely, he must then give 'specific, legitimate reasons' for

doing so."  Id.  (citing Miller v. Chater, 99 F.3d 972, 976 (10th Cir. 1996) (quoting Frey

v. Bowen, 816 F.2d 508, 513 (10th Cir. 1987)).

## B.      The ALJ's Analysis and Findings

The ALJ summarized the evidence regarding Plaintiff's evaluations by the

psychologists, Dr. Smith and Dr. Blasi.  (R. 17) (citing Exs. 6F, 14F (R. 321-26, 372-74)).

He noted that Dr. Smith diagnosed Plaintiff with antisocial personality disorder and that

Dr. Smith noted that Plaintiff has low average intellectual functioning and some problems

with attention, concentration, and short term memory.  Id.  He recognized that Dr. Smith

nevertheless found that Plaintiff's deficiencies did not significantly interfere with his

ability to function, and that there was no psychological reason Plaintiff would be unable

to work.  Id.  He also noted that Dr. Blasi identified a paranoid state with hallucinations,

10

but with only moderate symptoms or moderate difficulty in social, occupational, or school functioning.  (R. 17).

The ALJ noted that Plaintiff sought treatment at ComCare "for help with people not trusting him, depression, and anxiety," and expressed concern with inability to work but not receiving disability.  Id. (citing Ex. 18F (R. 392-420)).  ComCare is the mental health treatment facility where Dr. Lauronilla is the staff psychiatrist who provides medication review and management for Plaintiff.  (R. 394-97, 402-04, 408-12).[3]  The ALJ noted that at ComCare Plaintiff was diagnosed with major depressive disorder, but that his therapy focused on attempts to stay off drugs and alcohol, and that Plaintiff "admitted that his mental health issues are secondary to his drug problems."  (R. 17) (citing Ex 18F p.18 (R. 409)) ("admits that the drugs are foremost and MH issues are secondary").  The ALJ cited Plaintiff's March 2009 report to Dr. Lauronilla that "he had a 'slip off' last month and used cocaine."  (R. 18) (citing Ex. 18F p.11 (R.402)).

The ALJ explained how the ComCare treatment notes support his RFC assessment:

Due to the claimant's moderate difficulties with memory, attention and concentration, it is reasonable to conclude that the claimant is limited to work that is simple and unskilled.  The claimant has a history of antisocial behavior.  He reported that he changed his lifestyle and wants to avoid people who use drugs or alcohol.  (Exhibit 6F) [(R. 321-26)].  Due to the claimant's history of interpersonal conflicts, the evidence supports a finding

_____

[3]The "Medication Evaluation" performed on February 13, 2009 was signed by nurse practitioner (ARNP) Lusk, and may not have been one of the three instances Dr. Lauronilla reports he treated Plaintiff.  (R. 408-12).  If that is the case, the administrative record contains treatment notes regarding only two of the visits with Dr. Lauronilla.

that the claimant is limited to occasional to frequent contact with co-
workers and supervisors and no contact with the general public.

(R. 17).

He also explained why he gave "little weight" to Dr. Lauronilla's opinion:

the claimant's treating psychiatrist, Dr. Lauronilla, completed a Medical
Source Statement (Mental).  The doctor admitted that his assessment
was completed on [(1)] limited information as he had only seen the claimant for
3 medication appointment sessions.  The assessment showed that the
claimant has 10 moderate limitations of mental functioning and was
markedly limited in the use of public transportation.  (Exhibit 22F) [(R.
471-73)].  [(2)] Yet the claimant reported that he is able to use public
transportation.  (Exhibit 12E/6) [(R. 202)].  This opinion by Dr. Lauronilla
is given little weight.  It is [(3)] not consistent with the evidence or the
claimant's own assertions.  Staff at ComCare gave the claimant a Global
Assessment of Functioning of 50, which indicates serious symptoms or
serious difficulty in social, occupational or school functioning according to
the Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition.
(Exhibit 18F) [(R. 392-420)].  Due to [(4)] limited contact as indicated by
Dr. Lauronilla above, the opinion as to serious mental functioning is given
little weight.

(R. 18) (numbering added for ease in identifying and discussing the ALJ's rationale).

## C.    **Analysis**

The record supports the ALJ's summary of Dr. Lauronilla's opinion.  Dr.

Lauronilla diagnosed Plaintiff with both "Major Depression, Recurrent, Severe, with

Psychotic Features," and "Generalized Anxiety Disorder."  (R. 471).  As the ALJ noted,

Dr. Lauronilla found Plaintiff "Not Significantly Limited" (his impairment does not have

a notable impact on useful functioning) in nine of twenty mental abilities identified on the

psychiatrist's Medical Source Statement.  (R. 471-72).  He found Plaintiff "Moderately

12

Limited" (his impairment is <u>compatible with some but not all</u> useful functioning) in ten of the twenty mental abilities including: the abilities to understand, remember, and carry out detailed instructions; the ability to maintain attention and concentration for extended periods; the ability to perform, attend, and be punctual within customary tolerances; the ability to work in coordination with others without distraction;[4] the ability to complete a normal workday and perform at a consistent pace without interruption or an unreasonable need for breaks; the abilities to interact with the public or to respond to supervision; the ability to respond to changes in work setting; and the ability to set independent plans and goals.[4] <u>Id.</u> Finally, Dr. Lauronilla found Plaintiff "Markedly Limited" (<u>interferes seriously</u> with the ability to function independently, appropriately, effectively, and on a sustained basis) in the ability to travel in unfamiliar places or to use public transportation. At the end of his statement, Dr. Lauronilla appended a handwritten note: "Note: the above form was filled with limited information on patient since pt. was seen for med appointment by the undersigned for 3 med appointment sessions only." (R. 473).

Plaintiff argues the ALJ used Dr. Lauronilla's handwritten note improperly when he relied upon it "not as conditional, but as completely undermining the psychiatrist's

---

[4]The record at issue did not get recorded completely either when it was "faxed," or when it was copied into the electronic record in this case. (R. 471, 472). But, neither Plaintiff nor the Commissioner alleges error in this "incomplete" record, and the court takes judicial notice that the two "incomplete" mental abilities at issue are identified in the Commissioner's Form SSA-4734 (Mental Residual Functional Capacity Assessment) as "the ability to work in coordination with or proximity to others without being distracted by them," and "the ability to set realistic goals or make plans independently of others."

opinion." (Pl. Br. 7).   The court does not understand Plaintiff's argument.   There can be

no other conclusion but that Dr. Lauronilla's note undermines his opinion.   In fact, it

appears that Dr. Lauronilla provided the note for the specific purpose to apprise the reader

that the value of his opinion was at least somewhat suspect because he had limited

information, had only treated Plaintiff three times, and his purpose in treatment was

medication management.   Clearly, providing the note suggests that Dr. Lauronilla was

carefully weighing his opinion.   However, it also suggests, as the ALJ found, that the

basis for the opinion was weak.   It was not error for the ALJ to rely upon the note.

Plaintiff may be suggesting that the ALJ relied <u>solely</u> upon Dr. Lauronilla's note to

"undermine" the opinion.   This is not borne out by the record.   As the numbering in the

court's quotation above indicates, the ALJ provided four reasons to discount Dr.

Lauronilla's opinion.   Only two of those reasons relate to the note:   limited information,

and limited contact.   The note was not the ALJ's sole reason to discount the opinion.

As the ALJ noted, Plaintiff reported in an adult function report dated October 2,

2008 that he uses public transportation (R. 202), and this report is contrary to Dr.

Lauronilla's opinion that Plaintiff is markedly limited in the ability to use public

transportation.   Plaintiff argues that "this reason is insufficient to discount Dr.

Lauronilla's entire opinion."  (Pl. Br. 8).  The problem with Plaintiff's argument is that

Plaintiff's report that he uses public transportation is but one of four reasons given to

discount the opinion.   As discussed above, Dr. Lauronilla's opinion is not consistent with

Plaintiff's reported use of public transportation, Dr. Lauronilla noted that the opinion was based upon limited information, and after only three medication management visits with Plaintiff, and the opinion is also inconsistent with the record evidence.

The ALJ also found that Dr. Lauronilla's opinion was not consistent with the record evidence. (R. 18). Earlier he specifically noted that Dr. Blasi found only moderate symptoms or moderate difficulty, and that Dr. Smith found both that Plaintiff's deficiencies did not significantly interfere with his ability to function, and that there is no psychological reason Plaintiff is unable to work. (R. 17). These reports, at least, are record evidence inconsistent with Dr. Lauronilla's opinion. The ALJ stated his reasons for finding Dr. Lauronilla's opinion worthy of little weight, and those reasons are supported by substantial evidence.

Plaintiff also argues that the ALJ erroneously relied upon the GAF scores of ComCare staff, but ignored the scores assigned by Dr. Lauronilla. The court does not read the decision as does Plaintiff. In his decision, as quoted above, the ALJ noted that staff at ComCare assigned a GAF score of 50 "which indicates serious symptoms or serious difficulty in . . . functioning." (R. 18) (citing Ex. 18F). In the sentence immediately thereafter, the ALJ stated, "Due to limited contact as indicated by Dr. Lauronilla above, the opinion as to serious mental functioning is given little weight." Id. The court understands the ALJ to be saying that the GAF scores (indicating serious mental functioning) were given little weight for the same reasons Dr. Lauronilla's opinion

was given little weight.  Exhibit 18F, cited by the ALJ, contains both the ComCare medical records and Dr. Lauronilla's treatment records.  (R. 392-420).  Moreover, as Plaintiff points out, and as the Commissioner at least tacitly agrees, Dr. Lauronilla assigned GAF scores of 50 or near 50, as did other staff at ComCare.  (R. 396, 397, 404, 412, 419).  In this context, it appears the ALJ recognized that the GAF scores assigned by the staff at ComCare included Dr. Lauronilla's GAF scores, and he discounted the GAF scores for the same reasons he discounted the remainder of Dr. Lauronilla's opinion.

As the Commissioner argues, a GAF score reflects "the clinician's judgment of the individual's overall level of functioning."  American Psychological Ass'n, Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR) 32 (4th ed. Text Revision 2000). Therefore, it is proper to discount the GAF scores to the same extent the remainder of the clinician's judgment is discounted.  Moreover, as the Commissioner points out, GAF scores are but one piece of evidence in determining disability, and the decision at issue reveals that the ALJ considered those scores along with all of the other evidence.

Plaintiff argues that Dr. Lauronilla's opinion is worthy of greater weight than the opinions of Dr. Smith and Dr. Blasi because Dr. Lauronilla is a treating physician, and because Dr. Lauronilla is a psychiatrist, a medical doctor, whereas the other doctors are merely psychologists, without a medical degree.  As the court's discussion above makes clear, the ALJ applied the correct legal standard and provided specific, legitimate reasons for discounting Dr. Lauronilla's treating source opinion.  More is not required.

16

Other than the general rule that a specialist's opinion in the area of his speciality is generally worthy of greater weight than the opinion of another acceptable medical source, Plaintiff points to no authority that a psychiatrist's opinion is worthy of greater weight than the opinion of a psychologist. In this case, Dr. Lauronilla, a psychiatrist, and Dr. Smith and Dr. Blasi, psychologists, are all specialists in the field of mental health. A psychiatrist and a psychologist are both "acceptable medical sources" within the meaning of the regulations, and the court knows of no authority for reducing the weight accorded a psychologist's opinion merely because he is not a medical doctor--a psychiatrist. Plaintiff's argument to that effect is without legal, medical, or psychological authority. While it might be correct to argue in appropriate circumstances that a psychiatrist's opinion regarding medication management should be given greater weight than the opinion of a psychologist regarding medication management, that is not the case before the court, and the court makes no determination in that regard. Neither Dr. Lauronilla nor the psychologists in this case offered an opinion regarding medication management.

Plaintiff's primary argument is that his condition deteriorated in 2009 just before he first saw Dr. Lauronilla, and that Dr. Lauronilla's opinion is consistent with the record thereafter. In support of that argument he quotes extensively from an admission document when Plaintiff was admitted to Via Christi Regional Medical Center on February 9, 2009. (Pl. Br. 6) (quoting (R. 381, 383)). Plaintiff quotes from a section of the admission document titled "History of the Present Illness," in which the history was

17

obtained from Plaintiff's wife.  Id. (quoting (R. 381)).  Therein Plaintiff's wife relates that Plaintiff had expressed significant frustration with persistent pain, had a recent history (in recent weeks or months) of visual and auditory hallucinations and confusion, and had a diagnosis of depression.  (R. 381).  Plaintiff also quotes from the section of the admission document titled "Plan" and emphasizes the doctor's reference to the history reported by Plaintiff's wife which "clearly describes significant depressive symptoms and sense of hopelessness in the recent past and additionally provide[s] hints of underlying psychosis." (Pl. Br. 6) (quoting (R. 383)).  Plaintiff also points to a GAF score of 40 assessed on admission to the hospital, id. (citing (R. 434)), and to GAF scores of 50 and 52 assessed in 2009 at ComCare as further evidence suggesting that Plaintiff's mental health declined in 2009.  (Pl. Br. 8) (citing (R. 397, 404, 412, 419)).

The Commissioner argues that the evidence does not support Plaintiff's argument of declining mental health.  He admits that Plaintiff was hospitalized in February, 2009 for an accidental drug overdose and significant attendant mental health issues, but argues that after Plaintiff began treatment at ComCare and began properly taking his medications, his condition improved.  (Comm'r Br. 11).  The Commissioner points to evidence that by April 2009 Plaintiff's memory, attention, and concentration were intact, and his thinking was logical and linear.  (Comm'r Br. 11) (citing (R. 15, 395, 396)).  He points to Plaintiff's admission on February 13, 2009 that his mental health issues were less important than his drug problems, id. (citing (R. 17, 409)), and notes that Plaintiff

18

later reported that he and his wife were staying at his daughter-in-law's house to help care for children and grandchildren, and that Plaintiff indicated he would not be able to make his next appointment after May 7, 2009 because he and his wife were going on vacation. Id. (citing (R. 392, 399)).

The evidence cited by Plaintiff clearly shows that Plaintiff had an episode in February 2009 where he was hospitalized for an accidental drug overdose, and that health care providers were concerned with Plaintiff's mental health due to the surrounding circumstances and the reports of Plaintiff's wife.  It also shows that Plaintiff began mental health treatment with ComCare and that the ComCare providers assessed him with serious symptoms or serious impairments in functioning.  However, the record presents no further evidence of such serious deficiencies in functioning after Plaintiff began mental health treatment.  The evidence supports the Commissioner's argument, that Plaintiff experienced acute symptoms due to an accidental overdose which improved with treatment and he did not experience declining mental health at the beginning of 2009.  A one-time hospitalization due to accidental overdose and suspected serious mental health issues does not establish a decline in mental health sufficient to support Plaintiff's assertion that although Dr. Lauronilla's opinion is not consistent with the evidence from before 2009, it is "indeed consistent with the record from 2009 and forward."  (Pl. Br. 5).

In his reply brief, Plaintiff contends that the Commissioner's argument (that the evidence does not support the claim that Plaintiff's mental health declined in 2009) is

merely post hoc rationalization upon which the court may not rely because the ALJ did

not make the findings upon which the Commissioner's argument is based.  (Reply 2).  To

be sure, the ALJ did not make a finding that Plaintiff's mental health did not decline

beginning in 2009.  However, he did not find that Plaintiff's mental health declined,

either.  There is simply no record evidence from which the ALJ might have found a

decline in Plaintiff's mental health (other than an acute, short-term decline resulting from

accidental overdose and attendant issues) in the beginning of 2009.  It was Plaintiff in his

Social Security Brief who first proposed the argument regarding declining mental health,

in an effort to salvage Dr. Lauronilla's opinion.  It is not surprising that the ALJ did not

address the possibility of such a decline because, as the Commissioner points out, the

record evidence does not support such an argument.  Plaintiff cannot seriously suggest

that an ALJ must imagine and address every argument which might be later proposed by a

disappointed claimant so that on appeal the Commissioner might point to record evidence

which negates the claimant's argument.  That is not the purpose of the rule against post

hoc rationalization.

      Moreover, even if there were record evidence which might support Plaintiff's view

of the evidence, the court could find error only if the ALJ's findings are not supported by

substantial record evidence.  "The possibility of drawing two inconsistent conclusions

from the evidence does not prevent an administrative agency's findings from being

supported by substantial evidence.  We may not displace the agency's choice between two

fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo."  Lax, 489 F.3d at 1084 (citing Zoltanski v. F.A.A., 372 F.3d 1195, 1200 (10th Cir. 2004)); see also, Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966).

In his Social Security Brief, Plaintiff acknowledged that both Dr. Smith and Dr. Blasi "essentially thought plaintiff's mental condition would not interfere with work." (Pl. Br. 5-6).  In arguing that Dr. Lauronilla's opinion is inconsistent with the record evidence, the Commissioner argued that Dr. Lauronilla's "opinion is inconsistent with the opinion of the two consultative psychologists of record, both of whom found that Plaintiff could work at jobs involving the use of simple instructions and limited contact with the coworkers and the public."  (Comm'r Br. 10) (citing (R. 324, 374)).  The court notes that these limitations are similar to the ALJ's determination that Plaintiff "is limited to simple, unskilled work with only occasional to frequent contact with co-workers and supervisors and no contact with the general public."  (R. 15).  In his reply brief, Plaintiff apparently had a change of heart, and argued for the first time that Dr. Lauronilla's opinion is consistent with the opinions of Dr. Smith and Dr. Blasi.  (Reply 1-2).  Plaintiff quoted the Commissioner's statement as quoted above, and argued that

> defense counsel and the ALJ are incorrect.  Dr. Lauronilla found plaintiff "not significantly limited," the highest degree of functioning offered on the form he completed, in "[t]he ability to carry out very short and simple instructions."  And regarding contact with others, Dr. Lauronilla found no limitations in plaintiff's ability to "get along with coworkers or peers," and "maintain socially appropriate behavior."  There are no inconsistencies

between the treating psychiatrist and consultative psychologists as alleged
by the ALJ.

(Reply 1-2) (citations omitted).

Although Plaintiff is correct that Dr. Lauronilla found him "Not Significantly Limited" in the three mental abilities quoted in Plaintiff's reply brief, out of the twenty mental abilities identified in his medical source statement, Dr. Lauronilla also found Plaintiff "Moderately Limited" in ten mental abilities, and "Markedly Limited" in one mental ability. While the three mental abilities Plaintiff focused on in his reply brief appear on the surface to be consistent with portions of the opinions of Dr. Smith and Dr. Blasi, there can be no doubt that, as Plaintiff acknowledged in his brief, Dr. Smith and Dr. Blasi found Plaintiff's mental condition presented little interference with his ability to work whereas Dr. Lauronilla found that Plaintiff's mental condition would preclude all work even though there were a few mental abilities which he found were "Not Significantly Limited." Without doubt there are inconsistencies between the opinions of the consultative psychologists and the treating psychiatrist. Plaintiff has not shown error in the ALJ's determination to accord "little weight" to Dr. Lauronilla's opinion.

## IV.   Consideration of the Combined Effects of Plaintiff's Impairments

Plaintiff also claims that the ALJ failed to consider the combined effects of all of Plaintiff's impairments when he assessed Plaintiff's RFC. (Pl. Br. 9-10). Plaintiff points to the ALJ's recognition that Dr. Abbas, a neurologist, found a psychogenic problem involving right L-3 L-4 radiculopathy with significant psychogenic overlay. (Pl. Br. 9)

22

(citing (R. 17)).  Plaintiff points to Dr. Abbas's treatment records wherein the neurologist noted "psychogenic weakness," and "a psychogenic problem," and stated his impression of "right L-3 L-4 radiculopathy with absent knee jerk and significant psychogenic overlay." (Pl. Br. 10) (quoting (R. 354, 355)).  Based upon Dr. Abbas's findings, Plaintiff asserts that "Plaintiff's psychogenic pain is not speculative, but a diagnosis made by his neurologist, Dr. Abbas." Id.  Finally, Plaintiff argues that although the ALJ assessed physical limitations and mental limitations, he did not "consider any limitations deriving from a combination of the two as the statute requires." Id.  The Commissioner argues that the decision reveals the ALJ properly considered all of Plaintiff's impairments in combination. (Comm'r Br. 13).  He argues that although Dr. Abbas found a psychogenic overlay, none of the psychological experts including Plaintiff's psychiatrist, Dr. Lauronilla, found such a psychogenic overlay in Plaintiff's condition. Id. at 14.

As Plaintiff argues, the Act requires that in considering whether a claimant's impairment(s) are disabling "the Commissioner of Social Security shall consider the combined effects of all of the individual's impairments without regard to whether any such impairments, if considered separately would be of such severity." (Pl. Br. 9) (citing 42 U.S.C. § 423(d)(2)(B)); see also, 20 C.F.R. §§ 404.1523, 416.923.  In accordance with the statute and the regulations, the ALJ specifically noted that in assessing RFC, he "must consider all of the claimant's impairments, including impairments that are not severe." (R. 12-13).

In his decision, the ALJ found that Plaintiff has "severe" impairments of degenerative disc disease of the lumbar spine, major depressive disorder, personality disorder, and polysubstance abuse disorder in alleged remission.  (R. 13).  He also found that Plaintiff has medically determinable impairments which are not severe, including irritable bowel syndrome, pseudo-seizures, and hypertension.  (R. 14).  He considered all of the impairments at step three of the sequential evaluation process and found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments."  Id.  The ALJ also applied the Commissioner's psychiatric review technique in his consideration of mental impairments, and determined that the mental impairments do not meet or equal the severity of a listed mental impairment.  (R. 14-15).  Next, the ALJ summarized and considered the record evidence including Plaintiff's allegations and testimony, the medical evidence, the credibility of Plaintiff's allegations, the medical opinions, and the weight accorded to the medical opinions.  (R. 15-18).  The ALJ stated that he had made his RFC assessment "[a]fter careful consideration of the entire record," and found that Plaintiff has the RFC for a range of light work, limited to standing or walking only two hours in a workday; no climbing ropes, ladders, and scaffolds; and only occasional climbing, balancing, stooping, kneeling, crouching, or crawling.  (R. 15) (emphasis added).  He found that Plaintiff must avoid driving automobiles or operating machinery in his job duties, and must avoid: concentrated exposure to temperature extremes; moderate exposure to fumes, gases,

24

dusts, odors, and other pulmonary irritants; and all exposure to hazards such as moving machinery and unprotected heights.  (R. 15).  Finally, the ALJ found that Plaintiff "is limited to simple, unskilled work with only occasional to frequent contact with co-workers and supervisors and no contact with the general public."  Id.  The ALJ concluded his RFC analysis:

> After a thorough review of the evidence of record including Exhibits 1E-23E and 1F-23F, the claimant's allegations and testimony, forms completed at the request of Social Security, the objective medical findings, medical opinions, and other relevant evidence, the undersigned finds the claimant capable of performing work consistent with the residual functional capacity established in this decision.

(R. 18).

The court's review of the decision reveals that the ALJ made his RFC assessment after a thorough consideration of the record evidence.  He acknowledged the standard that required him to consider all of Plaintiff's impairments in combination in assessing RFC.  The only thing potentially missing from the decision is a specific statement that certain limitations were caused by physical impairments, certain limitations were caused by mental impairments, and certain other limitations were caused by a combination of the impairments.  To find error for the mere failure to make such a statement would be to elevate form over substance.  The court must determine whether there is any indication that the ALJ did not consider Plaintiff's impairments in combination.

Plaintiff asserts that the psychogenic overlay found by Dr. Abbas shows that physical and mental impairments combined to produce limitations in Plaintiff's abilities

25

which were not sufficiently considered and assessed by the ALJ.  (Pl. Br. 9-10).  He asserts that "Plaintiff's psychogenic pain is not speculative, but a diagnosis made by his neurologist, Dr. Abbas."  Id. at 10.

Plaintiff's assertion of psychogenic pain illustrates the error in his argument that the ALJ did not consider the effect of Plaintiff's impairments in combination.  Dr. Abbas simply did not suggest psychogenic pain in his report.  (R. 354-55).  Plaintiff presented to Dr. Abbas "with a complaint of back pain," id. at 354, and Dr. Abbas diagnosed "right L-3 L-4 radiculopathy with absent knee jerk and significant psychogenic overlay."  Id. at 355.  In his examination, Dr. Abbas found "a positive Hoover's sign on the right suggesting psychogenic weakness," id. at 354 (emphasis added), and "a reverse Lesage's sign that it is positive suggesting again that he has a psychogenic problem."  Id. (emphasis added).  Dr. Abbas also noted that "[s]ensory examination reveals a psychogenic problem because he says he cannot feel anything of the right leg but one time by mistake he said 'yes' when I touched the right thigh suggesting a patch loss."  Id. (emphasis added).  Dr. Abbas's report reveals psychogenic weakness and a psychogenic problem relating to an alleged lack of feeling, but there is simply no indication in the report recognizable to a lay observer such as the ALJ or this court that Dr. Abbas found any indication of psychogenic pain, much less that he made a diagnosis of psychogenic pain.  Further, as the Commissioner argued, Dr. Abbas is a neurologist, not a mental health specialist such as a

psychiatrist or a psychologist.  No mental health specialist suggested Plaintiff has

psychogenic problems of any kind, particularly psychogenic pain.

Moreover, and more importantly, Dr. Abbas did not suggest any physical or mental

limitations in Plaintiff's capabilities which might result from psychogenic pain,

psychogenic overlay, or from a combination of impairments.  Plaintiff does not point to

any limitations resulting from his impairments or combination of impairments which are

suggested by record evidence and which the ALJ did not consider or include in his RFC

assessment.  In these circumstances, where Plaintiff does not point to any specific error

and where the ALJ made his RFC assessment after a thorough consideration of the record

evidence and acknowledged the standard that required him to consider all of Plaintiff's

impairments in combination in assessing RFC, the court cannot find that the ALJ failed to

consider the combined effect of Plaintiff's impairments when assessing the ability to

work.  Plaintiff has shown no error in the decision.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the

fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's decision.

Dated this 30th  day of January 2012, at Kansas City, Kansas.


s:/ John W. Lungstrum_____
**John W. Lungstrum**
**United States District Judge**

27